**LEECH | TISHMAN**

<u>*VIA ECF*</u>                                                                                                    April 24, 2026

The Honorable Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square, Room 2201
New York, NY 10007

     RE:     *Ready Makers Inc., v. Christina Macedo et al.*
                  <u>Case No. 26-cv-00493-DLC</u>

Dear Judge Engelmayer:

Pursuant to Section 1(E) of Your Honor's Individual Rules and Practices and the Court's Notice of Initial Pretrial Conference dated March 31, 2026, Defendants Christina Macedo and Diecixi Co Limited (the "Moving Defendants") respectfully submit this letter-motion to request an adjournment of the Initial Pretrial Conference currently scheduled for May 6, 2026. The Moving Defendants request that the conference be adjourned *sine die* or until the Court resolves the Moving Defendants' forthcoming dispositive motion.[1]

Regarding the present request, Defendant Martin Cormier consents. Plaintiff Ready Makers Inc. ("Ready US" or "Plaintiff") does not consent on the grounds that discovery is not stayed.[2]

**The Imminent Motion to Stay or Dismiss**

By May 19, 2026, the Moving Defendants will move to stay or dismiss this action in its entirety under the *Colorado River* abstention doctrine and/or the doctrine of International Comity. In *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), the Supreme Court determined that a federal court may decline to proceed with a case when parallel litigation is pending in a state court, upon examining six enumerated factors. *See, e.g., Sitgraves v Fed. Home Loan Mtge. Corp.*, 265 F Supp 3d 411, 413 (S.D.N.Y. 2017) (dismissing federal action in favor of earlier commenced parallel state action regarding same subject matter).

The instant proceeding commenced by Plaintiff is an abusive, forum-shopping maneuver. Operating as a litigation shell, Plaintiff and its affiliates have spent the last sixteen months launching a coordinated campaign of harassment across multiple jurisdictions against Macedo

---

[1] This is the second request to adjourn an initial pretrial conference in this action, as prior to the case being reassigned to Your Honor, the parties filed a Stipulation on March 17, 2026, to adjourn the original March 20 conference and to set May 19, 2026, as the deadline for the Moving Defendants to respond to the Complaint. Judge Cote so-ordered that Stipulation on March 19, 2026, adjourning the conference to June 5, 2026. Upon reassignment, Your Honor rescheduled the conference to May 6, 2026.

[2] Because this application seeks an adjournment of the initial pretrial conference and no scheduling order has yet been entered in this action, granting this request will not affect any other scheduled dates, and therefore a proposed revised scheduling order is not attached.

and her affiliates. The core of this global dispute rests on several parallel actions concerning the exact same foundational dispute – the beneficial ownership of Ready Maker (Gibraltar) Limited ("Ready Gibraltar") and control over the "$PLAY" token platform:[3]

| Action | Court | Case Number | Date Filed |
|---|---|---|---|
| "Delaware Action" | Delaware Court of Chancery | C.A. No. 2024-1355-PAF | January 7, 2025 |
| "Gibraltar Action" | Supreme Court of Gibraltar | 2025/ORD/012 | January 29, 2025 |
| "Canada Action"[4] | Superior Court of Quebec | 700-17-022139-256 | December 19, 2025 |
| "SDNY Action" | Southern District of New York | 26-cv-00493-PAE | January 22, 2026 |

Plaintiff alleges in this Court that Ms. Macedo engaged in the "brazen looting of assets and corporate opportunities." However, Plaintiff's legal right to assert these tort claims depends entirely on whether Plaintiff or Macedo actually owns the assets in question – an issue squarely before the courts in Delaware and Gibraltar.

**_Colorado River_ Abstention in Favor of the First-Filed Delaware Action**

The Moving Defendants will establish that circumstances warrant a stay under _Colorado River_, in deference to the first-filed Delaware action. On January 7, 2025, more than a year prior to the SDNY Action, Plaintiff invoked the jurisdiction of the Delaware Court of Chancery to adjudicate its rights under the Intellectual Property Master Services Agreement ("IPMSA").

The actions are undeniably parallel. In Delaware, Plaintiff seeks a judicial declaration of ownership over its "GitHub account, Google Workspace account...and any information and intellectual property, including source code". Delaware Complaint, ¶105. In this Court, Plaintiff attempts to repackage that exact contract dispute under the IPMSA, into a tort claim under the Defend Trade Secrets Act ("DTSA"), alleging ownership of "protected computers" including "GitHub, Google" and other servers and databases. SDNY Complaint, ¶147. However, the tort claims asserted in this Court are inextricably dependent upon the exact contractual dispute already pending in Delaware. Plaintiff asks this Court to hold Defendants liable in tort for "misappropriating" digital infrastructure, "stealing" proprietary source code, and to impose a constructive trust over the proceeds of the $PLAY token launch. Yet, Plaintiff is actively asking the Delaware Court of Chancery to determine whether the IPMSA legally authorized the Defendants to access those exact same GitHub and Amazon Web Services accounts, utilize that exact same source code, and launch that exact same token ecosystem. This Court cannot adjudicate misappropriation claims without interpreting the same underlying contract at issue in Delaware. Adjudicating these claims simultaneously guarantees the piecemeal litigation _Colorado River_ warns against, risking a scenario where this Court issues an injunction over digital assets that the Delaware Chancery Court may rule were lawfully licensed and transferred.

---

[3] The "token platform" refers to the proprietary digital infrastructure and underlying software engine utilized to create, distribute, and manage the $PLAY digital assets.

[4] In December 2025, Plaintiff's affiliate filed a third lawsuit against Ms. Macedo in the Superior Court of Quebec (_Ready Makers Canada Inc. v. Macedo_), alleging the unauthorized expenditure of local corporate funds. While this peripheral dispute does not directly implicate the foundational ownership of the $PLAY tokens, its filing further underscores Plaintiff's vexatious strategy of waging a multi-jurisdictional campaign of harassment against the Defendants.

A motion to dismiss (orally argued March 27, 2026) is presently pending in Delaware, in which motion the defendant Ready Gibraltar argued that given the identity of claims Ready Makers brought in Gibraltar, the Delaware action should be dismissed, *inter alia*, for impermissible claim splitting (*i.e.* burdening the same defendant with duplicative proceedings in different courts brought by the same plaintiff based on different causes of action arising out of a common nucleus of facts). That Plaintiff omitted Ready Gibraltar from the SDNY Action may be a strategic attempt to evade a claim splitting charge, but only serves to highlight its bad faith.

**International Comity: The Gibraltar Action**

Furthermore, the doctrine of international comity strongly favors a stay pending the resolution of the more advanced Gibraltar action, in which significant litigation has ensued. Under the International Comity doctrine, the Court examines factors similar to the *Colorado River* factors. *See, e.g., SASOF III (A2) Aviation Ireland DAC v Air Senegal S.A.*, 2026 WL 249865, at *5 (SDNY Jan. 30, 2026) (granting stay of action in favor of parallel proceedings in Senegal).

The Gibraltar pleadings establish that the Plaintiff alleged IP theft and submitted the question of ownership of Ready Gibraltar to the Supreme Court of Gibraltar a full year before filing in New York: "Ready Gib was a creation of Ready US and that the latter owned, own and controlled Ready Gib and was intended to do so at all material times." Gibraltar Particulars of Claim, ¶12.

The Gibraltar Defendants' Answer and Counterclaim flatly rejected Plaintiff's claims to ownership of Ready Gibraltar, asserting that "In the regulatory filings…Macedo was identified as the sole registered controller and ultimate beneficial owner ("UBO")…No beneficial relationship with any of the Claimants was disclosed…This is because no such beneficial relationship exists and the regulatory filings from inception are correct and reflect the true position in relation to Ready Gib." Gibraltar Defendants' Defence and Counterclaim, ¶4.

While the Gibraltar Plaintiffs discontinued their affirmative claims, Defendants' counterclaims rely upon a determination of the ownership of Ready Gibraltar, which Plaintiffs' own Reply to Counterclaim concedes: "…[W]hether any loss has been suffered by the Defendants is wrapped up in the question as to the ownership of Ready Gib, a matter which the Court must determine before it determines the question of loss and/or damage." Ready Makers Inc. Reply and Defence to Counterclaim, ¶ 241. The Gibraltar Defendants continue to pursue their counterclaims in that forum.

The Gibraltar litigation is at an advanced stage, having already involved numerous motions and evidentiary hearings, including worldwide freezing orders, appellate review and reversal of same in Macedo's favor, and strike-out judgments in favor of Macedo. Crucially, on October 31, 2025, the Gibraltar Court ordered Plaintiff to pay £900,000 in security for costs. Plaintiff apparently defaulted on this obligation and subsequently faced orders striking out major portions of its claims. It was only after defaulting on these financial obligations and suffering substantive defeats abroad that Plaintiff filed the instant SDNY action in January 2026. This timeline demonstrates that the SDNY Complaint is blatant forum-shopping designed to evade the authority of the Gibraltar Supreme Court, where the ownership of Ready Gibraltar is going to be adjudicated. If the Gibraltar Court declares Ms. Macedo the beneficial owner of Ready Gibraltar,

Plaintiff's SDNY claims for trade secret misappropriation and breach of fiduciary duty will be rendered entirely moot.

**Judicial Economy Warrants an Adjournment**

Given the substantial overlap between these actions and Moving Defendants' imminent filing of a dispositive motion that challenges the prudence of exercising jurisdiction, holding a scheduling conference on May 6 would be premature and inefficient. Setting a discovery schedule and entering a Case Management Plan while the Moving Defendants are seeking a stay of the proceedings will subject the parties to significant expenditures on a discovery process that may ultimately be stayed or dismissed. Adjourning the conference until the threshold abstention issues are resolved serves the interests of judicial economy and the avoidance of duplicative, multi-national litigation.

We thank the Court for its time and consideration of this application.

Respectfully submitted,

/s/ *Michael A. Eisenberg*

cc:
All Counsel of Record via ECF
Martin Cormier (martincormier70@gmail.com)

Per the Court's Individual Rule 2(E), plaintiff's response is due April 29, 2026. For avoidance of doubt, all deadlines (including the April 29, 2026 deadline for the parties to submit a joint letter and proposed case management plan, *see* Dkt. 22 at 2) and the May 6, 2026 conference remain as scheduled, unless and until the Court orders otherwise.

SO ORDERED.

*Paul A. Engelmayer*

Date: April 27, 2026          PAUL A. ENGELMAYER
      New York, New York          United States District Judge

4