RAKOWER LAW • PLLC

April 29, 2026

**VIA NYSCEF**

Hon. Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

**Re:** ***Ready Makers Inc. v. Christina Macedo, et al.*****,**
**No. 26 Civ. 493 (S.D.N.Y.) (PAE)**

Dear Judge Engelmayer:

The parties submit this joint letter pursuant to your Honor's Notice of Initial Pretrial Conference dated March 31, 2026 (ECF 22).

**I. Brief Description of the Case**

***Plaintiff's Statement.*** Ready Makers creates software and other technology for the development of online games. Ready Makers spent years of work and millions of dollars developing a proprietary cryptocurrency token that would allow online games to be developed and played across multiple platforms. Defendant Christina Macedo, Ready Makers' CEO, was entrusted by Ready Makers with the launch of this cryptocurrency token project under the auspices of an affiliated entity incorporated in Gibraltar.

But Macedo breached her obligations to Ready Makers and stole the project for herself. She diverted ownership of the Gibraltar entity to Defendant DieciXi Co Limited, an entity she wholly owned. And she enlisted Defendant Martin Cormier, Ready Makers' CTO, to lock Ready Makers out of its own internal systems and commandeer the companies' assets and intellectual property for her new venture. She then renamed the project and launched it without Ready Makers' consent and without regard to Ready Makers' intellectual property or economic rights. Then, when Ready Makers attempted to enforce its contractual rights in court, Macedo repeatedly published false statements online that mischaracterized the parties' dispute, misrepresented court decisions concerning those disputes, and defamed Ready Makers and its principals.

By hijacking Ready Makers' online resources and systems and stealing Ready Makers' trade secrets and work product, Defendants violated the Defend Trade Secrets Act (18 U.S.C. § 1836) (Count 1) as well as the Computer Fraud and Abuse Act (18 U.S.C. § 1030, et seq.) (Count 2) and committed common-law misappropriation of trade secrets (Count 3). Macedo and Cormier's disloyal conduct breached their contractual (Counts 4-6) and fiduciary (Count 7) obligations to Ready Makers and constituted the actions of faithless servants (Count 9). DieciXi's receipt of ill-gotten ownership of the Gibraltar entity and its subsequent receipt of profits of the stolen cryptocurrency venture aided and abetted Macedo's fiduciary breach (Count 8) and gave rise to unjust enrichment (Count 10). Each defendant's unlawful conduct constitutes unfair competition (Count 11). And Macedo's objectively false statements of fact concerning Ready

Makers and its principals constitutes defamation (Count 12).

While the parties have litigated various discrete aspects of their disputes in the courts of Gibraltar and Delaware, the instant claims are properly filed in this court. In Gibraltar, the parties have litigated the rights of Ready Makers and certain of its principals and investors to receive tokens in connection with the Gibraltar entity's launch of the cryptocurrency project. And in Delaware, the parties are litigating the Gibraltar entity's contractual obligations to Ready Makers under a written licensing and services agreement. Finally, Ready Makers has sued Macedo in Canada (where she lived during much of her work for Ready Makers) in connection with her misappropriation of funds from Ready Makers' Canadian affiliate. Here, in contrast, Ready Makers sues to enforce Macedo and Cormier's obligations as employees and fiduciaries of Ready Makers and to redress DieciXi's facilitation and receipt of ill-gotten gains from Macedo and Cormier's breaches of those obligations. Further, these claims are properly venued in this Court because a substantial part of the events and omissions giving rise to the action occurred in this District, and each of the Defendants is subject to personal jurisdiction here.

Defendants' characterization of prior proceedings is inaccurate in material respects that Ready Makers will address more fully in opposition to the anticipated pre-answer motion. For now, Ready Makers notes that: (1) contrary to defendants' representation of Ready Gibraltar as a wholly unrelated entity, Ready Gibraltar was formed pursuant to a Ready Makers Board Resolution in an interested-party transaction under DGCL § 144; and (2) Ready Makers designated Macedo to lead Ready Gibraltar as an extension of her role with Ready Makers and for Ready Makers' benefit; and (3) Plaintiff voluntarily discontinued the Gibraltar proceedings after the Gibraltar court directed that IPMSA-related claims must be adjudicated in Delaware (2025/GSC/055, ¶ 36).

All defendants have been served and have appeared. Defendants Macedo and DieciXi, through counsel, have appeared, waived objections to service, and stipulated to an extension of time to answer until May 19, 2026. (ECF 19.) Defendant Cormier has appeared pro se and answered the complaint. (ECF 21.)

***Defendants Macedo and DieciXi's Statement.*** Defendant Christina Macedo ("Macedo") is an individual domiciled in Portugal, and Defendant Diecixi Co Limited ("Diecixi", together with Macedo, the "Macedo Defendants") is a Maltese company for which Macedo is the sole director, 100% shareholder, and ultimate beneficial owner. Macedo is the sole registered controller and ultimate beneficial owner of non-party Ready Maker (Gibraltar) Limited ("Ready Gibraltar"). Ready Gibraltar is an independent entity that has never had any familial or beneficial affiliation with Plaintiff Ready Makers Inc. ("Plaintiff" or "Ready US"), and the regulatory filings in Gibraltar have from inception correctly reflected Macedo's sole ownership to the exclusion of any interest by the Plaintiff. The Macedo Defendants aver that Macedo owed no contractual or fiduciary duties to Ready US at any material time that could support the claims asserted in the Complaint. Macedo developed Ready Gibraltar with her own team, culminating in the successful launch of Ready Gibraltar's $PLAY Token in December 2024. After Macedo declined to allocate additional tokens to Plaintiff's principals, they commenced a bad faith action in Gibraltar to institute a worldwide injunction of the $PLAY Token, which injunction was reversed shortly thereafter and affirmed on appeal, with the court excoriating Plaintiff for material non-disclosures

in obtaining the injunction and manifesting "a miscarriage of justice." However, the short-lived injunction accomplished Plaintiff's goal of essentially strangling the nascent $PLAY Token economy in the cradle, which the Gibraltar court described as a "groundless and damaging interlocutory onslaught on the operation of Ready Gibraltar's business…" The Gibraltar defendants then successfully dismissed *with prejudice* Plaintiff's claims for fraud, conspiracy and bad faith. Should the anticipated motion to dismiss or stay (as set forth in Doc. No. 23) be denied, the Macedo Defendants are exploring whether to assert in this Court counterclaims or crossclaims against Plaintiff (and affiliated individuals) arising from their bad-faith litigation campaign.

The Macedo Defendants' legal defenses in this action are grounded in a flat rejection and denial of certain allegations in the complaint, express authorization for the conduct alleged, and the equitable doctrine of unclean hands. Plaintiff's "looting" narrative has no basis in fact, as the digital infrastructure at issue never contained or employed any proprietary code or other substantive IP owned or licensed by Plaintiff. The $PLAY Token was made using open-source code compiled at Macedo's direction by developers hired and paid by Ready Gibraltar. The defamation claim is meritless because the statements are substantially true and/or protected opinion, and Plaintiff suffered no damage in any event.

Finally, the Macedo Defendants reject Plaintiff's assertion that there is no meaningful overlap between these proceedings and the prior actions. Plaintiff has already conceded in the Gibraltar litigation that the Supreme Court there must determine the foundational dispute regarding the ownership of Ready Gibraltar before any claim for loss or damage can be adjudicated. Because this Court cannot resolve the New York tort claims without first interpreting the underlying contracts and ownership rights currently being litigated both in the first-filed Delaware Action and the second-filed Gibraltar Action, the Macedo Defendants will further detail these threshold issues and the Plaintiff's bad-faith forum shopping in their forthcoming Motion to Stay or Dismiss. *See* Doc. No. 23.

***Defendant Cormier's Statement.*** Defendant Martin Cormier disputes plaintiff's characterization of the facts and intends to defend against the claims asserted.

## II. <u>Contemplated Motions</u>

Macedo and DieciXi have separately stated their intention to move for dismissal or stay. (ECF 23.) That motion is due May 19th.

Cormier has not at this stage determined whether he will pursue any pretrial motions.

## III. <u>Prospect for Settlement</u>

The parties are open to engaging in settlement discussions and to mediation following the conclusion of fact discovery. They are also willing to discuss with the court an informal preliminary exchange of information to facilitate potential settlement discussions.

Respectfully submitted,

*/s/ Michael C. Rakower*
Michael C. Rakower
Travis J. Mock
Rakower Law PLLC
*Counsel for Plaintiff*

*/s/ Michael A. Eisenberg*
William A. Rome
Michael A. Eisenberg
Leech Tishman Robinson Brog, PLLC
*Counsel for Defendants Christina Macedo and DieciXi Co. Limited*

*/s/ Martin Cormier*
Martin Cormier, *Defendant Pro Se*

cc: All Counsel of Record and *Pro Se* Parties (via ECF)